UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JUDY A. WELCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:11-CV-002 CAN |
| ) | |
| MICHAEL J. ASTRUE ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On May 25, 2011, Plaintiff, Judy A. Welch ("Welch"), filed her complaint seeking review of the final decision of Defendant, Commissioner of Social Security ("Commissioner"). On May 25, 2011, Welch filed her opening brief. On August 31, 2011, Commissioner filed his response. Welch filed her reply brief on September 20, 2011. This Court now enters its ruling based on its jurisdiction under 42 U.S.C. § 405(g).

**I.   PROCEDURE**

On April 19, 2007, Welch filed an application for disability benefits alleging a disability beginning on February 2, 2007. The claim was initially denied on July 24, 2007. She filed for reconsideration on September 17, 2007, and was denied on November 5, 2007. Welch testified at an administrative hearing on February 2, 2010 by an Administrative Law Judge ("ALJ"). On March 12, 2010, the ALJ issued its decision denying Welch's application for disability benefits. Welch then filed her complaint in this Court pursuant to 42 U.S.C. § 405(g).

**II.   ANALYSIS**

**A.   Facts**

The Plaintiff, Judy Welch, was born on October 23, 1965. She was 44 years old when

the ALJ rendered her decision. Welch has a ninth grade education and has previous work experience as a taxi driver. On February 2, 2007, Welch fell down 15 basement stairs and went to Elkhart General Hospital. She complained of pain in her left arm from her shoulder to her wrist, and rated the pain an 8 or 9 on a scale of 10 degrees. The examination revealed left shoulder tenderness, but normal physical and neurological examinations, and normal X-rays.

### 1.   Medical Evidence

On February 2, 2007, the same day as the onset of the alleged disability, the attending physician at the hospital noted that Welch had some tenderness in her left shoulder, but had normal X-rays and physical and neurological examinations. Welch was prescribed pain medication and released. She applied for disability benefits on March 30.

In June 2007, Welch underwent a psychological review by a state agency reviewing psychologist, who stated that Welch had no medically determinable psychological impairment. She noted that Welch only claimed physical problems in her application for benefits, but also mentioned being in special education classes. However, the psychologist observed that Welch's high school transcript showed I.Q. scores of 78-80 at age 16 and did not indicate any special education classes. Further, medical records and forms completed by Welch and her son's father mentioned only physical impairments. Finally, she noted that Welch's nearly 10 years of taxi driving ended due to physical, not mental, impairments. The psychologist's opinion was affirmed as written five months later by another state agency physician.

On July 2, 2007, Welch underwent an internal medicine examination at the request of the state agency. Welch complained of back and leg pain, and indicated using a cane. Additionally, she reported a history of seizures, including Grand Mal seizures, for which she took a

prescription medication. The last Grand Mal seizure she experienced was 10-15 years ago. She stated that she took over-the-counter pain medications and anti-inflammatories because she had daily migraines. She had not been prescribed medication for these migraines, but had been treated in the emergency room for them. She further reported shortness of breath at rest, heartburn, and numbness.

The examining physician's impression was that Welch suffered from a history of seizures, history of migraines, history of back and leg pain, hypoglycemia, and history of diabetes mellitus. He did not believe that the use of a cane was necessary at the examination. He observed that Welch walked with a normal gait, heel-toe walked, and tandem walked. She also appeared comfortable in the seated and supine positions, had a negative straight leg raising test, and had normal range of motion, sensation, reflexes, and grip strength. He reported that Welch had "somewhat reduced" motor strength in her legs, "but there was a question as to [Welch's] effort related to the strength test in the lower extremities." He believed that Welch should be able to perform light work with occasional medium work and no climbing or work around unprotected heights.

Three weeks after the physician's examination, a third state agency reviewing physician stated that Welch could perform medium work; never climb ladders, ropes, or scaffolds, but frequently perform all other postural activities; and should avoid all exposure to work hazards. Welch was denied disability benefits on July 24, 2007.

On August 5, 2007, Welch went to the hospital complaining of leg pain and requesting a medication refill. Other than slight tenderness above Welch's thighs, the attending physician stated it was a normal examination. He diagnosed her with acute bilateral leg pain and renewed

her prescription for seizure medication and prescribed a pain reliever. Welch applied for reconsideration of disability benefits on September 17, 2007.

In October 2007, Welch saw Dr. Devens, her treating physician, and complained of lower back and leg pain. Dr. Devens reported that her seizures were uncontrolled and also noted that she had lumbosacral and right leg pain. He diagnosed her with degenerative joint disease of the spine and prescribed an arthritis medication. Additionally, he ordered an MRI, which was performed on October 15, 2007. The MRI revealed minimal degenerative facet arthritis in the lower back, but was otherwise normal with no disc herniation or central canal stenosis.

On November 5, 2007, Welch's reconsideration for benefits was denied. She requested a hearing for November 26. Welch met with Dr. Devens on November 15 for a follow-up, and at that time she complained of significant back pain being either unable to walk or work. Dr. Devens prescribed her arthritis medication and stated he would meet with her again in four months.

On November 29, 2007, Dr. Devens completed a residual functional capacity ("RFC") questionnaire in which he diagnosed Welch with a back injury and seizure disorder. He reported that Welch had a lumbar spine MRI and suffered from Grand Mal seizures, but she suffered no side effects from her medications. Further, Dr. Devens did not identify any psychological conditions; however, he believed that Welch's pain was severe enough to frequently interfere with her attention and concentration. Additionally, Welch's seizures were uncontrolled, so Dr. Devens did not believe that Welch could handle even a low-stress job. He stated that Welch could walk less than one block without rest or pain, sit for 20 minutes at a time for a total of less than two hours, occasionally carry 10 pounds, never carry 20 pounds, and occasionally perform

postural activities. Additionally, he opined that Welch needed to walk around every 30 minutes for 10 minutes at a time and needed a sit-stand option, but she did not need to use a cane or elevate her legs. He did not state whether Welch would miss any work days in a given month due to her impairments.

On March 17, 2008, Welch met with Dr. Devens complaining of continued back pain and requested stronger pain medication. Dr. Devens noted that she was having difficulty walking. He diagnosed her with degenerative joint disease in her lumbosacral spine and stated he would see her again in one month. On April 17, Welch returned to Dr. Devens' office with continued back pain. Except for tenderness in her lower back, her pain had improved. He maintained the diagnosis of degenerative joint disease and prescribed her a pain killer. He requested to see her again in six months.

In March of 2009, almost a year after her April 2008 appointment, Welch saw Dr. Devens with complaints of neck pain. He reported that Welch had full range of motion in her neck, but diagnosed her with cervical arthritis and prescribed a pain killer. In June 2009, Welch complained of swelling in her legs and again saw Dr. Devens. His examination revealed swelling. He told her to elevate her legs and to return to his office in two months.

On July 21, 2009, Dr. Devens wrote a letter stating that Welch had degenerative arthritis of the spine diagnosed with an MRI and uncontrolled Grand Mal seizures. These impairments, he stated, made it impossible for Welch to work any full-time job. Additionally, he completed a second RFC questionnaire. In it, he again reported that Welch suffered from no side effects of her medications, and that he could not identify any psychological conditions. He stated that Welch's pain was severe enough to frequently interfere with her attention and concentration,

which are needed to perform work tasks. He believed that because of her uncontrolled seizures, Welch could not tolerate even low-stress jobs. He repeated his opinion about Welch's ability to walk, sit, stand, and perform postural activities. He stated that Welch needed to walk around every 45 minutes for 15 minutes at a time, but did not need a cane or to elevate her legs. Dr. Devens believed that Welch would miss about four days per month as a result of her impairments and treatments for them.

An X-ray was taken of Welch's foot in August 2009. The result was normal and showed no fractures. Dr. Devens diagnosed Welch with depression on August 25, but did not prescribe any treatment. In November 2009, at Welch's request, Dr. Devens wrote that she had controlled seizures, that she had not had any seizures in more than two years, and was okay to drive.

    **2.**    **ALJ Hearing on February 2, 2010**

        **a.**    **Welch's Testimony**

Welch testified that she could not work because of constant back pain she has due to a fall down 15 basement steps. She said that prescription pain killers helped the pain and that it caused no side effects. Also, she stated that she no longer suffered from daytime seizures and now only had them at night while she slept. After such a seizure, she woke up feeling weak the next morning. Further, she indicated that she had daily headaches and was a slow learner. She testified that she was not able to fill out job applications or disability forms by herself. Welch also stated that she had memory problems and had to write down appointment dates; however, she did not need reminders to take her medications.

Welch said that she needed a cane to walk every day, and if she did not take her water pills, she had swelling in her feet and had to elevate her legs. She stated that she could lift five

pounds, sit for 20 minutes at a time, and walk two blocks before having to stop. She further testified that she could not bend or twist her body very well and that she became lightheaded when she tried to bend over. Welch said she could drive, do housework, sweep, mop, cook, wash dishes (but with breaks), shop for groceries with an electric cart, see friends, do puzzles, and write poems.

### b. Vocational Expert's Testimony

The ALJ asked a vocational expert what work could be performed by someone who could lift 20 pounds occasionally and 10 pounds frequently, push and pull to the extent that they could lift and carry, sit for six of eight hours, stand and walk for six of eight hours, occasionally climb stairs, ramps, and balance, stoop, crouch, kneel, and crawl. The expert testified that such a person could perform the unskilled, light work of a parking lot attendant, cleaning worker, or information clerk. He also stated that Welch could return to her prior work as a pizza delivery driver. There were about 2000 to 2400 light, unskilled jobs in the region.

The ALJ then narrowed the hypothetical by restricting the weight to no more than 10 pounds occasionally, sitting and standing for no less than two out of every eight hours, and never climbing ladders, ropes, or scaffolds. The vocational expert testified that no full-time, competitive jobs would be available to this individual.

The expert concluded testifying by stating that the use of a cane would eliminate the jobs of cleaning worker and pizza delivery driver. He also testified that elevating one's legs parallel to the ground for 20 to 50 percent of the day would also eliminate all of the previously cited jobs.

### c. ALJ Determination

On March 12, 2010, the ALJ found that Welch had severe impairments, but that her

impairments did not meet or equal one of the listed impairments.  Further, the ALJ found that Welch's testimony was not reliable and that she retained a limited RFC to perform light work, such as a parking lot attendant, cleaning worker, or information clerk.

### 3. Medical Evidence not before the ALJ

On April 7, 2010, about one month after the ALJ's decision, Welch went to a psychiatric center for an assessment from a social worker.  She complained of severe depression, isolation, sleeping excessively with a poor energy level, and having fleeting suicidal thoughts and mild concentration problems.  She said that she was currently seeing Dr. Devens, who prescribed an antidepressant over the past five to six months.  The social worker noted that Welch said she was recently denied disability benefits and that her attorney "referred her as a way of substantiating her psychiatric problems for her appeal of her Disability denial."  The social worker diagnosed her with moderate, recurrent depression with a secondary diagnosis of likely borderline intellectual functioning.  He gave her a Global Assessment Functioning ("GAF") Score of 55[1] and referred her to individual therapy with the possibility of medication management.

Welch visited Dr. Devens again on June 15, 2010 complaining of continued back pain. He refilled her medications, prescribed pain killers, and limited her to sedentary work.  The next day, Welch returned to the psychiatric center and saw a nurse practitioner.  She said she was seeking an evaluation because she was depressed and was curious about disability.  She said her chronic pain led to her continued depression.  Further, she said she cried all of the time and had significant anxiety, but had few problems with personal relationships.  Finally, she told the nurse

---

[1] GAF scores represent on a single day an individual's overall level of functioning, including symptom severity.  The GAF numeric scale runs from 0 through 100.  The higher the GAF score, the less severe the symptoms and the individual will have a higher level of functioning.

practitioner that the antidepressant she took once per month helped her anxiety and depression, but she quit taking it because it gave her headaches.

The nurse practitioner's observations included that Welch had problems with memory and knowledge tests, but logical, coherent thought and normal attention. He also noticed that she felt entitled to receive disability benefits. Welch's diagnoses were moderate, recurrent major depressive disorder, and borderline intellectual functioning. She received a GAF score of 55 and was prescribed a different antidepressant. The nurse practitioner believed that she "likely had a decline in her medical condition. It [wa]s not clear [to him] that [Welch] should be a candidate for disability based solely upon the psychiatric diagnosis." The nurse practitioner's treatment note was reviewed and signed by the collaborating physician the next day.

Welch went back to the psychiatric center on July 19, 2010 complaining that she did not feel better and that she was getting headaches from the new antidepressant. The nurse practitioner prescribed a different antidepressant, but did not change his earlier diagnoses. The collaborating physician co-signed the treatment note the next day. Welch produced the records from the psychiatric center and her June 15 appointment with Dr. Devens on August 9, 2010.

### B.     Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. *See* 42 U.S.C § 405(g); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v. Barnhardt*, 322 F.3d 912, 915 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed *de novo*. *Haynes*, 416 F.3d at 626. Substantial evidence is more than a scintilla and means such relevant evidence as a reasonable mind might accept to support such a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes*, 416 F.3d at 626. An ALJ decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

### C. Welch's Motion for Remand

Welch must establish that she is disabled to be entitled to benefits under the Social Security Act. *See* 42 U.S.C. § 423(a)(1)(D). The Act specifically defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; *Briscoe*, 425 F.3d at 352. If the ALJ can find that the claimant is not disabled at any step, he does not go on to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

An impairment or combination of impairments is considered severe if the applicant's physical or mental ability to perform basic work activities is significantly limited. 20 C.F.R. §

404.1521(a). The combination of impairments is taken into account, even if each individual impairment would not be considered severe. 20 C.F.R. § 404.1523. If the applicant does not meet this requirement, then the applicant is not disabled. 20 C.F.R. § 404.1520(c). In order to be considered severe, the impairment must either cause the applicant's death, or has lasted or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. When assessing the severity of an impairment, the applicant's age, education, and work experience are not considered. *Id.* However, it is still possible for the applicant to have been disabled for a period of time in the past even if the applicant currently does not have a severe impairment. *Id.*

If the applicant's impairment or combination of impairments meets the requirements outlined in Subpart P, Appendix 1 and also meets the duration requirement, then the applicant is disabled without considering the applicant's age, work experience, or education. 20 C.F.R. § 404.1520(d). Once the ALJ finds that the applicant is not disabled after the first three steps, then the ALJ assesses the RFC. 20 C.F.R. § 404.1520(e). The RFC is the applicant's ability to do physical and mental work activities on a sustained basis despite limitations. *Id.* Once the RFC is determined, it is compared to the applicant's past relevant work to see if the applicant could still perform that type of work. 20 C.F.R. § 404.1520(f). If the applicant could still perform past relevant work, then the applicant is not disabled. *Id.* Past relevant work includes any substantial work performed within the last 15 years. 20 C.F.R. § 404.1560(b)(1). The applicant has the burden to prove the first four steps, but upon reaching step five, the burden shifts to the Commissioner. 20 C.F.R. § 404.1520(e).

Although Welch raises several issues, the Court only addresses whether the ALJ properly considered evidence of Welch's leg pain and swelling.

Welch alleges that the ALJ failed to properly analyze the combination of her impairments. She argues that the RFC assigned to her does not accurately take into account the severity of her impairments. Specifically she claims that the ALJ failed to consider her leg pain and swelling. Welch first complained of leg pain to the state examining physician in July 2007. He saw no need for use of a cane, and questioned Welch's effort during a leg strength test. Additionally, he believed that she could perform light work at that time. In August 2007, Welch again complained of leg pain, but the attending physician only noted slight pain above her thighs and diagnosed her with acute bilateral leg pain. She complained of leg pain again in October 2007, and in June 2009 she complained of swelling in her legs, which was diagnosed as edema. Dr. Devens told her to elevate her legs to alleviate the swelling.

While the ALJ is not required to address "every piece of evidence or testimony in the record, [her] analysis must provide some glimpse into the reasoning behind the decision to deny benefits." *Zurwaski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). During the ALJ hearing, Welch's attorney asked the vocational expert whether a person with swelling in her lower extremities who needed to elevate her legs could perform light jobs. The vocational expert responded that there are no jobs for a person with Welch's skill level who is required to elevate her legs. Because the need to elevate her legs is significant enough to eliminate all jobs, this Court finds that the ALJ must provide some glimpse into the reasoning behind the decision to deny benefits. However, in her decision, the ALJ made no reference to Welch's leg swelling. This Court finds that this is reversible error, and the ALJ needs to provide a greater explanation that includes consideration of Welch's leg swelling in her decision.

### III.    CONCLUSION

Because the ALJ failed to properly consider evidence of Welch's leg pain and swelling, Welch's motion for remand is **GRANTED**. Accordingly, this Court **REMANDS** the ALJ's decision and instructs the ALJ to address Welch's leg swelling as well as any new evidence that may have arisen.

**SO ORDERED**

Dated this 14th day of November, 2011.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge